UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANUJ GUPTA and DINA GUPTA, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:08-cv-1241 (WWE) |
| | : | |
| GREAT NORTHERN INSURANCE COMPANY, | : | |
|     Defendant. | : | |

### RULING ON DEFENDANT'S MOTION TO DISMISS

This action arises from an insurance contract between plaintiffs Anuj and Dina Gupta, as insureds, and defendant Great Northern Insurance Company, as insurance provider.  The Guptas seek declaratory relief that defendant has a duty to defend and indemnify plaintiffs in connection with an automobile accident.  Now pending before the Court is defendant's Motion to Dismiss (Doc. #10), which, for the following reasons, will be granted.

The Court has jurisdiction over plaintiffs' claim pursuant to 28 U.S.C. § 1332.

### BACKGROUND

For purposes of ruling on this motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiffs reside in Stamford, Connecticut.  Great Northern Insurance Company ("Great Northern") is a New Jersey insurance company with a principal place of business in New Jersey.  It is authorized to conduct business in Connecticut.

On March 31, 2005, Great Northern issued a homeowner's insurance policy to

1

plaintiffs. The policy commenced on March 31, 2005 and expired on March 31, 2006.[1]

On November 2, 2005, with authorization from plaintiffs, Manja Wurschke was using a car owned by Anuj Gupta when she was involved in an accident. As a result of the accident, Luis Alarcon sustained personal injuries and commenced a civil action against plaintiffs and Wurschke seeking damages. On February 7, 2008, this action was settled for $475,000, of which $375,000 was to be paid by the Guptas.

The insurance policy had coverage in the amount of $500,000.[2] In relevant part, it provided:

> LIABILITY:
>
> This [$500,000] is the total amount of your liability coverage. It applies to all property for which you have liability coverage....
>
> Your liability coverage covers damages for which you are legally responsible....
>
> LIABILITY CONDITIONS:
>
> These conditions apply to all liablity coverage in this policy.
>
> **Other insurance**
>
> **Vehicles and Uninsured/Underinsured Motorists:** When other liability insurance applies to covered damages, we will pay our share.

---

[1] Plaintiff filed a copy of the policy with their complaint. Therefore, the Court may consider it on this motion to dismiss. See Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993) (On a Rule 12(b)(6) motion to dismiss, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered.").

[2] There is a chart annexed to the policy that includes the covered property. The only item listed in the chart is plaintiffs' house.

PERSONAL LIABILITY COVERAGE:

We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies. Exclusions to this coverage are described in **Exclusions**.

* * *

[T]he following definition of "occurrence" applies: "Occurrence" means an accident or offense to which this insurance applies and which begins within the policy period.  Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence.

A "covered person" means: any person using a vehicle ... covered under this part of your Masterpiece policy with permission from you or a family member with respect to their legal responsibility arising out of its use....

"Damages" means the sum that is paid or is payable to satisfy a claim settled by us or resolved by judicial procedure or by a compromise we agree to in writing.

EXCLUSIONS:

These exclusions apply to this part of your Masterpiece Policy, unless stated otherwise.

**Motorized land vehicles**.  We do not cover any damages arising out of the ownership [or]  use ... of any motorized land vehicles....

This exclusion does not apply to motorized land vehicles in dead storage at your residence, to motorized land vehicles used solely on and to service a residence premises shown in the Coverage Summary, or to golf carts.

This exclusion does not apply to the Extra Coverage, Rented or Borrowed Vehicles.

3

Prior to filing this action, Great Northern twice denied any coverage for the damages arising from the accident.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading), cert. granted, 128 S. Ct. 2931 (2008).

Plaintiffs contend that the "Personal Liability Coverage" and "Exclusions" sections contain mutually-exclusive language. They read the following language as suggesting, for obvious reasons, that the "Exclusions" define what is excluded from the policy:

> We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies.

Further, they argue that the introductory language from the "Exclusions" section, which provides that the "exclusions apply to this part of your Masterpiece Policy, unless stated otherwise," conflicts with the "Coverage" language. They claim that these provisions create a linguistic ping pong match where each exclusion is not complete as it leaves space for other exclusions that may be "stated otherwise" elsewhere.

An insurance contract is analyzed to assess the intent of the parties: what the insured expected to receive and what the insurer expected to provide. See Royal Ins. Co. of Am. v. Zygo Corp., 2003 U.S. Dist. LEXIS 14172 (D. Conn. Aug. 15, 2003). "Where the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. If, however, the words of the policy are susceptible of two equally reasonable interpretations, the Court must adopt that interpretation that will sustain the claim and cover the loss." Id.; see also Heyman Assocs. No. 1 v. Ins. Co. of Pa., 231 Conn. 756, 769-70 (1995). Where there is clear and unambiguous language, "the determination of what the parties intended by their contractual commitments is a question of law." Thompson & Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123, 131 (1987); see also Mycak v. Honeywell, Inc., 953 F.2d 798, 802 (2d Cir. 1992).

The court may only grant defendant's motion where the language of the insurance policy is unambiguous and neither raises any issue of fact nor renders plaintiff's claim plausible. See Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990) (addressing summary judgment). Simply because the parties offer opposing interpretations of the insurance policy does not mean that the policy is ambiguous. See

5

Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir. 1985) ("Contorted semanticism must not be permitted to create an issue where none exists"). Because the insurer drafted the contract, any ambiguity in the contract must be construed in favor of the insured. Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co., 254 Conn. 387, 399 (2000).

The Court finds no ambiguities in the policy's language. Reading the coverage provision, the policy covers damages that a covered person is legally obligated to pay unless an exclusion applies. A "covered person" includes a person using a vehicle covered under the policy. There are, however, vehicles covered under the policy besides those vehicles included in the "Exclusions." That is, an insured under the policy has coverage for rented or borrowed vehicles under the "Extra Coverages" provisions, and the "Exclusions" section specifically includes coverage for "motorized land vehicles in dead storage," vehicles used on or to service the residential premises of the policy and golf carts. The "Exclusions" section therefore specifically excludes from coverage "any damages arising out of the ownership [or] use ... of any motorized land vehicle."

Plaintiffs point to the introductory language of the both the "Personal Liability Coverage" and "Exclusions" sections as it says the provisions apply "unless stated otherwise" and contend that this language creates an ambiguity. The Court disagrees, however. A careful reading of the policy clarifies it to the reasonable person. Other language noted by plaintiffs, including the language in the Masterpiece Policy stating "for each occurrence, we will pay up to the amount of your liability coverage as explained in your policy," is similarly unambiguous. Accordingly, defendants' motion to

dismiss will be granted.  See Arias-Benn v. State Farm Fire & Cas. Ins. Co., 495 F.3d 228 (5th Cir. 2007) (affirming dismissal of complaint where unambiguous policy excludes coverage for occurrence at issue).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (Doc. #10) is GRANTED.  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 5th day of February, 2009.

                                            /s/
                                     Warren W. Eginton
                                     Senior United States District Judge